UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

JOHN NIXON,                                    )
          Plaintiff,                        )
                            )
     vs.                                          )
                            )        1:08-cv-00648-LJM-JMS
LUCIEN C. HAAG, *et al.*,                      )
          Defendants.                       )
                            )
                            )

## ORDER

Presently before the Court are four motions:

- Defendants' Joint Motion for Stay of Discovery Pursuant to the Indiana Anti-SLAPP Act (the "Motion to Stay") [Dkt. 73],

- Plaintiff's Motion for Continuance in Accordance with FRCP 56 and Indiana Trial Rule 56 (the "Motion to Continue") [Dkt. 77],

- Defendant Brundage's Supplemental Motion for Continuance of Dispositive Motion Deadline (the "Supplemental Motion to Continue") [Dkt. 94], and

- Defendants' Joint Motion for Protective Order (the "Motion for Protective Order") [Dkt. 96].

Together, these motions seek to determine the amount of discovery that the Plaintiff, Mr. Nixon, should be able to conduct before responding to Defendants' Motion to Dismiss Pursuant to the Indiana Anti-SLAPP Act (the "Motion to Dismiss") [Dkt. 70].

### BACKGROUND

In this diversity action, Mr. Nixon has sued the Defendants for defamation, together with tortious interference with his business and contractual relationships.  [Dkt. 1.]  Mr. Nixon earns his living as a firearms, ballistics, and explosives consultant.  [*Id.* ¶13.]  He says that the Defendants made certain false statements about him that have damaged his professional

reputation, causing some of his clients to terminate their relationships with him and damaging his ability to obtain new clients.  [*See id.* ¶¶ 19, 28, 35.]  The statements at issue include these:

- that Mr. Nixon was "disqualified" as an expert in a particular criminal proceeding,

- that Mr. Nixon falsely testified about the reasons for his membership rejection from Defendant Association of Firearms and Tool Mark Examiners ("<u>AFTE</u>"), and

- that Mr. Nixon is a "AFTE headache from here in Indiana" whose days "maybe, just maybe…are numbered."

[*Id.* ¶¶9-11.]

In their Motion to Dismiss, the Defendants have alternatively submitted evidence that they claim establishes the truth of those statements, they claim that the statements weren't factual statements about Mr. Nixon at all; both claims are defenses to defamation, *Journal-Gazette Co., Inc. v. Bandido's Inc.*, 712 N.E.2d 446, 457 (Ind. 1999).  [Dkt. 71 at 14.]  And even if they turn out to be false, the Defendants claim that they still can't be liable because they made the statements in good faith, with a reasonable basis in law and fact, and made them about matters of public concern.  [*See id.* at 11-13.]  That too is a defense.  Ind. Code § 34-7-7-5.

## DISCUSSION

### A.  The Defendants' Motion to Stay

The parties dispute the source of the law that the Court should apply to their discovery dispute.  The Defendants argue that Indiana's "Anti-SLAPP Act," found in Ind. Code §§ 34-7-7-1 to -10, automatically stays all discovery except that relevant to the pending Motion to Dismiss. [Dkt. 74 at 2-3.][1]  Mr. Nixon, in turn, argues that the discovery limitations in the Anti-SLAPP Act are inapplicable in federal court; therefore, he should have the full panoply of discovery that the Federal Rules of Civil Procedure provide.  [*See* Dkt. 76 at 8-11.]   The Court finds that it is

---

[1]  A "SLAPP" is a "strategic lawsuit against public participation."  *Shepard v. Schurz Communs., Inc.*, 847 N.E.2d 219, 221 (Ind. Ct. App. 2006).

not required to impose a stay of discovery as the Defendants have argued.

### 1. Limited Discovery Under Indiana's Anti-SLAPP Act

The Indiana General Assembly passed the Anti-SLAPP Act "to reduce the number of lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." *Hamilton v. Prewett*, 860 N.E.2d 1234, 1242 (Ind. Ct. App. 2007). To that end, the Act sets up an expedited procedure for resolving suits that potentially arise out of the defendant's exercise of his or her free speech rights over matters of public concern. A defendant can seek to establish the protected nature of the speech at issue by filing a "motion to dismiss" that is treated as a motion for summary judgment. Ind. Code § 34-7-7-9.[2] Upon filing of that motion, a statutory stay applies to all discovery, "except for discovery relevant to the motion." *Id.* § 34-7-7-6.

### 2. The Scope of Discovery Under the Federal Rules of Civil Procedure

Operating in tandem to help "secure the just, speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ. Pro. 1, two hallmarks characterize the discovery provisions that the Federal Rules of Civil Procedure provide.

First, after the discovery-planning meeting, Fed. R. Civ. Pro. 26(d)(1), the Rules afford parties liberal discovery. They can then discover "any nonprivileged matter that is relevant to any [other] party's claim or defense." *Id.* 26(b)(1). Courts construe relevance for discovery purposes "broadly to encompass any matter that bears on, or that reasonably could lead to any other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund v.*

---

[2]   The Federal Rules of Civil Procedure already require a court to treat a motion to dismiss as a motion for summary judgment when the motion to dismiss relies on matters outside the complaint (as contemplated by the Anti-SLAPP Act). Fed. R. Civ. Pro. 12(d). Further, a defendant may move for summary judgment at any time, with or without supporting affidavits." *Id.* R. 56(b). Thus, there is no conflict between this aspect of the Anti-SLAPP Act and the Federal Rules of Civil Procedure.

*Sanders*, 437 U.S. 340, 351 (1978) (citation omitted).  *See also Gatewood v. Stone Container Corp.*, 170 F.R.D. 455, 458 (S.D. Iowa 1996) ("It is not too strong to say that a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." (quotation omitted)).

Second, the Rules empower the Court with considerable discretion to manage (among other things) the timing, extent, frequency, and manner of discovery.  *See* Fed. R. Civ. Pro. 26(c); *Gile v. United Airlines, Inc.*, 95 F.3d 492, 494-95 (7th Cir. 1996).  The Court must use that discretion to ensure that technically proper discovery does not impose oppression or undue burden or expense.  Fed. R. Civ. Pro. 26(b)(2), (c).

### 3.  The *Erie* Problem

The Defendants have repeatedly and emphatically claimed that the Anti-SLAPP Act's automatic discovery stay provision applies to this case, meaning that only discovery relevant to their Motion to Dismiss may occur.  Yet they largely fail to acknowledge, much less satisfactorily address, the elephant hiding in the corner:  *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), and its progeny.

The *Erie* doctrine requires that "federal courts sitting in diversity apply state substantive law and federal procedural law."  *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996).  *See also* 28 U.S.C. § 1652 (providing that state law provides the rules of decision in diversity cases unless superseded by federal law).  The line between the two types of law can sometimes be "difficult and nuanced."  *Barron v. Ford Motor Co.*, 965 F.2d 195, 202 (7th Cir. 1992) (Ripple, J., concurring).  Nonetheless, this Circuit applies a "shorthand" approach to the substance-versus-procedure dichotomy that resolves most disputes.  *Id.*  As the Seventh Circuit has recently explained, "[r]ules of procedure…[promote] accuracy, efficiency, and fair play in litigation, without regard to the substantive interests of the parties…..Substantive rules, on the

4

other hand, are concerned with directing behavior outside of the courtroom.   They tell individuals, organizations and governments to do certain things or abstain from certain conduct on pain of some sanction."   *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 537 (7th Cir. 2007) (citations omitted).

Here, the Anti-SLAPP Act's statutory stay of discovery conflicts with the Federal Rules of Civil Procedure.   The former purports to limit discovery to matters relevant to a motion to dismiss / motion for summary judgment under the Anti-SLAPP Act while the motion is pending. Ind. Code § 34-7-7-6.   The latter expressly permits discovery into "any nonprivileged matter that is relevant to any party's claim or defense," whether any motion is pending or not.   Fed. R. Civ. Pro. 26(b)(1).

Under the *Thomas* test, that conflict is a procedural one.   The Federal Rules provide liberal discovery to promote accuracy and fairness in litigation.   *See, e.g.*, *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958) (noting that liberal discovery in federal court makes "trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent").   Discovery rules do not channel parties' non-litigation behavior on pain of legal sanction.

In their only attempt to, obliquely, deal with the *Erie* issue, the Defendants assert that Indiana has a "compelling, substantive" interest in enforcing the narrowed scope of discovery. [Dkt. 79 at 4.]   But they don't develop that claim with argument, nor do they offer any legal authority in support of it.   That alone is enough to prevent them from overcoming the presumption under the *Thomas* test that the cabined discovery otherwise authorized under the Anti-SLAPP Act ought to give way in the face of Federal Rule of Civil Procedure 26(b)(1).   *See United States v. Giovannetti*, 919 F.2d 1223, 1230 (7th Cir. 1990) ("A litigant who fails to press

5

a point by supporting it with pertinent authority, or by showing why it is a good point despite a lack of supporting authority or in the face of contrary authority, forfeits the point." (emphasis and citations omitted)).

Beyond that, however, the Defendants have cited authority to support their position that the Federal Rules, and not the Anti-SLAPP Act, should control discovery in federal court. California's version of the Anti-SLAPP Act permits the defendant to put the plaintiff to his proof without the benefit of discovery.  Cal. Code of Civ. Pro. § 425.16(g).  Nonetheless, the Ninth Circuit held that, under *Erie*, Federal Rule of Civil Procedure 56(f) permits a plaintiff to obtain discovery before responding to a special motion to strike (the California equivalent of the Defendants' Motion to Dismiss).  *Metabolife Int'l v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001). In so holding, the court agreed with the Central District of California, which had previously reached the same conclusion.  *Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 985 (C.D. Cal. 1999).

In conclusion, Rule 26(b)(1)'s scope of discovery is congressionally authorized.  *See* 28 U.S.C. § 2071 (authorizing the promulgation of the Federal Rules).  That rule is a procedural rule.  Thus, the federal procedural rule supersedes the conflicting state-law procedural rule restricting the scope of discovery; no "statutory" stay of discovery applies to this case.  *See Hanna v. Plumer*, 380 U.S. 460, 473-474 (1965) ("*Erie* and its offspring cast no doubt on the long-recognized power of Congress to prescribe housekeeping rules for federal courts even though some of those rules will inevitably differ from comparable state rules....To hold that a Federal Rule of Civil Procedure must cease to function whenever it alters the mode of enforcing state-created rights would be to disembowel either the Constitution's grant of power over federal procedure or Congress' attempt to exercise that power [through 28 U.S.C. § 2071]." (citations

omitted)).[3]

The Defendants' Motion to Stay is **DENIED** to the extent that it seeks the entry of a stay required under the Anti-SLAPP Act.

### B. Mr. Nixon's Motion to Continue

As indicated previously, the Defendants have filed their Motion to Dismiss. It is, however, misleadingly named; really, it's a motion for summary judgment (as it references matters outside the pleadings). Ind. Code § 34-7-7-9; *accord* Fed. R. Civ. Pro. 12(d). That means that Federal Rule of Civil Procedure 56 applies. *CanaRx Svcs., Inc. v. LIN Television Corp.*, 2008 WL 2266348, *5 (S.D. Ind. 2008) (McKinney, J.).

Mr. Nixon has not yet filed his response to the Motion to Dismiss. Instead, he has filed an affidavit under Federal Rule 56(f), saying that he needs discovery before he can respond (discovery that has been stalled because of the dispute over the statutory stay). [Dkt. 77-1.]

Under Rule 56(f), when a party shows by affidavit that "it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order." Fed. R. Civ. Pro. 56(f). So long as the responding party has not been dilatory and shows that discovery is likely to reveal essential evidence for its summary judgment response, courts generally give the responding party a continuance. *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986) (noting that

---

[3] For the present motions, the Court has assumed that the Anti-SLAPP's discovery stay actually applies in Indiana courts. The validity of that assumption is not clear. The Court has found the stay in contravention to Federal Rule of Civil Procedure 26(b)(1). That provision is similarly worded to Indiana Trial Rule 26(b)(1). If the stay likewise conflicts with Indiana Trial Rule 26(b)(1), the stay is a "nullity," as the Trial Rules supersede contradictory statutes. *Shepard v. Schurz Communs., Inc.*, 847 N.E.2d 219, 224 (Ind. Ct. App. 2006) (citation omitted) (refusing to apply portion of Anti-SLAPP Act that purports to change summary judgment standard).

7

summary judgment may be granted against a plaintiff "as long as the plaintiff has had a full opportunity to conduct discovery"); *Miller v. Account Mgmt. Servs.*, 2008 U.S. Dist. LEXIS 16402 (N.D. Ind. 2008) (collecting cases).

The Defendants do not object to giving Mr. Nixon a forty-five day continuance to conduct discovery and another thirty to prepare his response; they make no claim that he has not satisfied the requirements of Federal Rule of Civil Procedure 56(f). [*See* Dkt. 80 ¶5.] Mr. Nixon is unclear about just how long he thinks that he needs for discovery, but does clearly state that he would need at least thirty days after the completion of his discovery to prepare his response. [Dkt. 77 at 5.]

The Court concludes that a sixty-day continuance (to and including September 8, 2009) is more appropriate than the seventy-five day bifurcated continuance that the Defendants have proposed. Once Mr. Nixon has filed his response, briefing on the Motion to Dismiss will return to the schedule set forth in Local Rule 56.1. The Court will, therefore, **GRANT** the Motion to Continue to that extent (the scope of that discovery will be discussed next). Given that Mr. Nixon contemplates both oral and written discovery, bifurcation along the lines that the Defendants have proposed would not permit him to conduct any "follow-up" discovery on his initial discovery. It also requires issuing a longer continuance than is otherwise necessary. Thus, the Court has rejected that proposal.

### C. The Defendants' Motion for Protective Order

While the Motion to Stay was pending, Mr. Nixon (re)served the discovery requests that are at issue here. [*See* Dkt. 96-1 ¶9; *see also* Dkt. 76 at 11-15.][4] Specifically, he served sixty-seven requests for production to Defendants Haag and Brundage each, together with deposition

---

[4]   On two prior occasions, the Court ordered the parties to meet and confer, to reach an agreement about the proper scope of discovery. [Dkts. 78, 82.] They reached no agreement.

notices to them; he also served seventy-one requests for production to Defendant AFTE, along with a twenty-one topic 30(b)(6) deposition notice to it.  [Dkt. 96-3 to -8.]   Citing the Anti-SLAPP Act's discovery stay, the Defendants have moved for a protective order over those requests, seeking to limit them only to items relevant to the pending Motion to Dismiss.  [Dkt. 96.]  Mr. Nixon says that his discovery is all relevant to the Motion to Dismiss; his view of relevance is simply broader than is that of the Defendants.  [*See* Dkt. 97 at 6.]

## 1.  Appropriateness of a Protective Order Limiting Discovery

Although the Court has rejected the Defendants' argument that the Court must, pursuant to state statute, impose a stay limiting discovery to only those issues implicated in their Motion to Dismiss, the Court still has the discretion to do so in this case, as it does in any other.  *See  In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 336 (N.D. Ill. 2005) ("Limitation or postponement of discovery may be appropriate when a defendant files a motion to dismiss for failure to state a claim on which relief can be granted. The mere filing of the motion does not automatically stay discovery….But such stays are granted with substantial frequency." (citations omitted)).  The Federal Rules explicitly permit the Court, for good cause shown, to control the "time…[of] discovery" and to "limit[] the scope of… discovery to certain matters."  Fed. R. Civ. Pro. 26(c)(1)(B), (D).

Good cause exists to limit discovery to that which is relevant to the Motion to Dismiss for several reasons.  First, doing so will promote comity (and thereby reduce the incentive to forum shop).  Second, where discovery will not lead to evidence that will have any bearing on a dispositive motion, subjecting litigants to it constitutes a waste of time and money.  *See also* Fed. R. Civ. Pro. 26(b)(2)(iii) (requiring the Court to limit discovery when "the burden or expense of the proposed discovery outweighs its likely benefit").  Finally, Mr. Nixon concedes that he

should not conduct discovery that is irrelevant to the Motion to Dismiss and denies that he is trying to do so—he simply disputes the scope of what is relevant to that motion.  [*See* Dkt. 97 at 6 (claiming that "all" his discovery is "relevant to the issues raised by Defendants' Anti-SLAPP Motion" (capitalization altered), 13 (arguing that the Motion for Protective Order "is unnecessary since the law already provides for a stay of discovery" (capitalization altered)[5].]

The Court finds that limiting discovery to matters relevant to the pending Motion to dismiss is proper.

### 2.  Scope of Permissible Discovery

Because the Court has limited discovery to that which is relevant to the pending Motion to Dismiss, the Court now turns to the heart of the parties' dispute:  defining that limit.

As indicated previously, an Anti-SLAPP Act motion to dismiss has three elements:   (1) The speech must concern a public issue, (2) be made in good faith with a reasonable basis in law and fact, and (3) be otherwise be lawful.  *CanaRx,* 2008 WL 2266348, at *7.  "Good faith" means "a state of mind indicating honesty and lawfulness of purpose; belief in one's legal right; and a belief that one's conduct is not unconscionable." *Id.* (quotation omitted).

For the pending Motion to Dismiss, the "lawfulness" of the Defendants' statements turns on whether they are defamatory.  Defamation requires "(1) a communication with defamatory imputation, (2) malice, (3) publication, and (4) damages," *CanaRx*, 2008 WL 2266348, at *6 (citation omitted).  A communication can have defamatory imputation only if it "tends to injure reputation or to diminish esteem, respect, good will, or confidence in the plaintiff, or to excite derogatory feelings or opinions about the plaintiff," *McQueen v. Fayette County School Corp.*, 711 N.E.2d 62, (Ind. Ct. App. 1999) (citation omitted), and is also capable of being true or

---

[5]  Mr. Nixon does not explain the inconsistency between this latter point and his opposition to the Defendants' Motion to Stay.

false, *id.* at 66-67.   The latter is required because truth is an absolute, affirmative defense to defamation.   *CanaRx,* 2008 WL 2266348, at *6 (citation omitted); *Gatto v. St. Richard School, Inc.*, 774 N.E.2d 914, 924 (Ind. Ct. App. 2002).   For the purposes of defamation, "malice" requires a defendant to "publish[] a defamatory statement with knowledge that it was false or with reckless disregard of whether it was false or not."   *CanaRx*, 2008 WL 2266348, at *6 (quotation omitted).   It has nothing to do with malice in the ordinary sense of the word.   *Shine v. Loomis*, 836 N.E.2d 952, 958 (Ind. Ct. App. 2005) ("The actual malice element required by the United States Supreme Court and our state courts is not to be confused with the ordinary definition of "malice" as "an evil intent or motive" arising from spite or ill will." (citation omitted)).   *See also Bandindo's*, 712 N.E.2d at 456 ("To demonstrate reckless disregard, there must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication, or proof that the false publication was made with a high degree of awareness of their probable falsity." (quotations and citations omitted).)

In essence here, Mr. Nixon says that because summary judgment (which is what the Motion to Dismiss is) requires the opposing party to "put up or shut up," *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003), he must conduct discovery on each of the elements described above. [*See* Dkt. 97 at 3-5.] The Defendants say that Mr. Nixon should only be able to conduct discovery into the public issue element, the good faith element, the defamatory imputation element, and the truth (or falsity) of the allegedly defamatory statements. [*See* Dkt. 98 at 10.] Those were the only elements that they addressed in their Motion to Dismiss.   Therefore, they say, there is no need for discovery into malice, publication, damages. Nor is there any need to delve into whether ill will or excessive publication has vitiated a qualified privilege that may otherwise shield them from liability for false defamatory statements.

*See, e.g.*, *Poyser v. Peerless*, 775 N.E.2d 1101, 1111 (Ind. Ct. App. 2002).

The Court agrees with the Defendants that their Motion to Dismiss does not implicate publication, damages, and qualified privilege, and discovery into those matters will be deferred for the time being.  Their Motion to Dismiss is clear that they contend that the statements at issue "were lawful because each statement is either true or does not allege facts about Plaintiff."  [Dkt. 71 at 14 (capitalization altered).]  If they are correct in that regard, Defendants should prevail  on their Motion to Dismiss the defamation claim as the statements were lawful and, if the public-issue elements and good faith elements are also satisfied, must award attorneys' fees under the Anti-SLAPP Act.  *See CanaRx*, 2008 WL 2266348, at **5-9.  On the other hand, if the Court disagrees (or finds conflicting evidence) about the alleged truthfulness of the Defendants' statements about Mr. Nixon, Defendants ought to lose the Motion to Dismiss because the Defendants have not argued that a qualified privilege applies.  Either way, Mr. Nixon need not address publication, damages, and whether a qualified privilege does or does not apply.  (As explained later though, discovery into ill will is nonetheless still appropriate.)

The Court does, however, find that discovery into actual malice is appropriate.  The Defendants have argued that an Anti-SLAPP Act dismissal is appropriate because they had a "good faith" and "reasonable basis in…fact" regarding the truth of the statements at issue.  *See* Ind. Code § 34-7-7-5(2).  As indicated above, malice can be satisfied with a showing of recklessness, *see Bandido's*, 712 N.E.2d at 760 (Boehm, J., concurring) ("[T]he 'reckless disregard' prong of 'actual malice' should be satisfied under Indiana law if one publishes a report with no idea whether it is true or not.").  Discovery into the reasonableness of the Defendants' belief in the statements at issue is inextricably intertwined with discovery into their recklessness about the statements' truth or falsity.  *Cf.* Model Penal Code § 2.02(5) ("When the

law provides that negligence suffices to establish an element of an offense, such element also is established if a person acts purposely, knowingly or recklessly.").

Mr. Nixon has argued that excessive publication and ill will are both relevant to the issue of actual malice. [Dkt. 97 at 10.]  As to the first, the Court disagrees.  Excessive publication is not the same thing as a lack of good faith.  *See Schrader v. Eli Lilly & Co.*, 639 N.E.2d 258, 262 (Ind. 1994) ("The essential elements of the defense of qualified privilege are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner to the appropriate parties only. In the present case, appellants attack the qualified privilege by claiming excessive publication, that is, publication to inappropriate parties." (citation omitted)).  On the other hand, even though qualified privilege is not at issue, ill will may still be relevant to malice.  *Cochran v. Indianapolis Newspapers*, 372 N.E.2d 1211, 1220 (Ind. Ct. App. 1978) ("While 'ill-will' is not an element of the legal definition of 'actual malice,' it is nevertheless relevant and admissible as evidence in the determination of whether defendant possessed a state of mind highly conducive to reckless disregard of falsity." (citations and emphasis omitted)); *see also Indianapolis Newspapers, Inc. v. Fields*, 259 N.E.2d 651, 664 (Ind. 1970).

Accordingly, the Court will **GRANT IN PART** and **DENY IN PART** the Motion for Protective Order.  Until further order of Court, discovery shall be limited to matters relevant to the Motion for Protective Order, as outlined above.  Within five days, Mr. Nixon shall serve revised discovery requests consistent with the limitations set forth in this Order.[6]  Mr. Nixon is cautioned that he should—as required—"carefully craft document production requests [and

---

[6]  In their briefing, the Defendants have advised that they have produced all documents relating to the truthfulness of their statements [*See* Dkt. 98 at 7-8.]  If the Defendants do not have any responsive documents to a particular document request, they shall so state in their response to the document request, with the required Fed. R. Civ. Pro. 26(g)(1) certification.

30(b)(6) topics] so they are limited to those documents [or categories of testimony counsel] reasonably believe are necessary for the prosecution or defense of an action." Stands. for Prof. Cond. Within the 7th Fed. Jud. Cir., Lawyers' Duties to Other Counsel, Stand. 23. Failure to do so may result in an assessment of attorneys' fees, even if the Motion to Dismiss is denied. *See* Fed. R. Civ. Pro. 26(g)(2)(iii), (3).

### D.   Defendant Brundage's Supplemental Motion to Continue

The final remaining motion is Defendant Brundage's Supplemental Motion to Continue. That motion seeks to move the (non-Anti-SLAPP Act) dispositive motion deadline. Originally, that deadline was set as April 30, 2009. [Dkt. 45 at 6.] Because the Court has already vacated all case management deadlines [Dkt. 101], the Supplemental Motion to Continue is **DENIED AS MOOT**. A case management conference is set for October 26, 2009 at 1 p.m.

CONCLUSION

The Court **DENIES** the Motion to Stay on the grounds that the statutory stay relied upon is inapplicable to litigation in this Court.

The Court **GRANTS** the Motion to Continue and will permit Mr. Nixon sixty days (to and including September 8, 2009) to complete discovery and file his response to the pending Motion to Dismiss. Once the response is filed, the briefing will resume with the schedule set forth in Local Rule 56.1.

The Court **GRANTS IN PART** and **DENIES IN PART** the Motion for Protective Order, staying pending further order of Court all discovery except that relating to:

(1) whether the alleged defamatory statements concerned public issues;

(2) whether the Defendants made the statements in good faith and with a reasonable basis in law and fact;

(3) whether the statements are capable of defamatory imputation;

(4) whether the statements are true; and

14

(5) whether the Defendants acted with actual malice in making the statements at issue. Within five days, Mr. Nixon shall serve revised discovery requests consistent with the limitations set forth in this Order.

The Court **DENIES AS MOOT** the Supplemental Motion to Continue and sets this matter for a case management conference on October 26, 2009  at 1 p.m. in Room 361, U.S. Courthouse, 46 E. Ohio Street, Indianapolis, Indiana.

07/07/2009

Jane Magnus-Stinson
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF:**

Matthew D. Bruno
KIGHTLINGER & GRAY
mbruno@k-glaw.com

Lante K Earnest
TABBERT, HAHN, EARNEST & WEDDLE, LLP
One Indiana Square
Suite 1900
Indianapolis, IN 46204

Mark S. Fryman Jr.
STARR AUSTEN MYERS & MILLER
fryman@starrausten.com

Edmund W. Golden
GOLDEN & FONTE
eg@goldenfonte.nocoxmail.com

Robert M. Kelso
KIGHTLINGER & GRAY
rkelso@k-glaw.com

Jason M. Massaro
TABBERT HAHN EARNEST & WEDDLE, LLP
jmassaro@tabberthahn.com

Jeffrey T. Oberman
LEVIN & OBERMAN
oberman01@sbcglobal.net

Raymond T. Seach
RILEY BENNETT & EGLOFF LLP
rseach@rbelaw.com

Scott L. Starr
STARR AUSTEN MYERS & MILLER LLP
starr@starrausten.com