UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN NIXON,<br>  Plaintiff,<br><br> vs.<br><br>LUCIEN C. HAAG, DAVID J. BRUNDAGE,<br>and ASSOCIATION OF FIREARMS AND<br>TOOL MARK EXAMINERS,<br>  Defendants. | 1:08-cv-0648-LJM-DML |

**ORDER ON PLAINTIFF'S RESPONSE TO COURT'S ORDER TO SHOW CAUSE**

On October 14, 2009, the Court converted defendants', Lucien C. Haag ("Haag"), David J. Brundage ("Brundage"), and Association of Firearms and Tool Mark Examiners ("AFTE") (collectively, the "Defendants"), Motion to Dismiss plaintiff's, John Nixon ("Nixon"), Complaint into a Motion for Summary Judgment and ordered Nixon to show cause why Defendants should not be entitled to summary judgment on his defamation claim (the Court's "Show Cause Order"). Dkt. No. 137. The Court has considered the parties' arguments on this issue and rules as follows.

**I. BACKGROUND**

AFTE is an organization of firearms and ballistics forensic experts that are often called upon to testify in criminal cases. *See generally* Defs.' Ex. 8 (Dkt. No. 72-8). Haag and Brundage were AFTE members at all times relevant to this action. Compl. ¶ 15. According to Ron Marrs ("Marrs"), then chairman of AFTE's board of admissions, Nixon applied for and was denied AFTE membership in 2003. Marrs Aff. (Dkt. No. 72-2) ¶¶ 13-

14. Following his AFTE rejection, Nixon was retained to testify for the defense in *State of Indiana v. Darryl Jeter*, Cause No. 45G04-0312-MR-00010 (hereafter, the "*Jeter* case," the "*Jeter* trial," or referencing the "*Jeter* court"), a capital murder trial. Defs.' Ex.'s 6, 7 (Dkt. Nos. 72-6, -7). However, in an e-mail sent by Deputy Prosecuting Attorney Clare Bradley Lubek ("Lubek") to Haag, Lubek reported that the court "refused to qualify" Nixon as an expert in the *Jeter* case. Defs.' Ex. 5 (Dkt. No. 72-5). Haag, in turn, forwarded Lubek's e-mail to Brundage along with a message that reads, in pertinent part:

> Don Denio was prepared to come in and testify to Nixon's false testimony about his AFTE membership rejection but it turns out that it was not necessary. . . . Nixon was disqualified as a firearms expert.

*Id.* Brundage forwarded Lubek's e-mail and Haag's message to twenty-five recipients under the subject line, "NIXON DISQUALIFIED AS A FIREARMS EXPERT." *Id.* Brundage's message refers to Nixon as an "AFTE headache" whose days may be numbered. *Id.* Nixon alleges that the statements made by Haag and Brundage in these e-mails are defamatory under Indiana law. Compl. ¶¶ 8-11.

The Court adds additional facts as needed below.

## II. <u>STANDARDS</u>

### A. DEFAMATION

Whether a statement is capable of possessing a defamatory meaning is a question of law for the Court. *Journal-Gazette Co., Inc. v. Bandido's, Inc.*, 712 N.E.2d 446, 457 (Ind. 1999). "In order to impose liability for defamation, the United States Constitution requires a false statement of fact." *Id.* The statement is not considered false unless any inaccuracies caused the statement to produce a more damaging effect on the plaintiff's

reputation than that which the absolute truth would have produced. *Id.* In other words, if a statement is substantially true, it is not defamatory. *Id.*

### B. SUMMARY JUDGMENT

Summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). *See also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267-68 (7th Cir. 1990), *cert. denied*, 499 U.S. 923 (1991). Motions for summary judgment are governed by Rule 56(c) of the Federal Rules of Civil Procedure, which provides in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c). Summary judgment is the "put up or shut up" moment in a lawsuit. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003), *reh'g denied*. Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials that "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996), *cert. denied*, 520 U.S. 1116 (1997).  It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies.  *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).  When the moving party has met the standard of Rule 56, summary judgment is mandatory.  *Celotex*, 477 U.S. at 322-23; *Shields Enters., Inc. v. First Chi. Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

In evaluating a motion for summary judgment, a court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party.  *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996), *cert. denied*, 519 U.S. 1109 (1997).  The mere existence of a factual dispute, is not sufficient to bar summary judgment.  Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment.  *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996).  Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute.  *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992).  "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party."  *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996), *cert. denied*, 519 U.S. 1115 (1997).

### III. DISCUSSION

The first statement by which Nixon alleges he was defamed is Haag's reference to "Nixon's false testimony about his AFTE membership rejection." Defs.' Ex. 5 (Dkt. No. 72-5). Defendants have designated uncontradicted evidence that this statement was substantially true. *Bandido's*, 712 N.E.2d at 457. During a 2004 preliminary hearing in the *Jeter* case, Nixon was questioned about his educational background. Defs.' Ex. 6 (Dkt. No. 72-6) ("Jeter Prelim. Tr.") at 50:3-13. Nixon stated that "there are no education[] entry requirements to be a member of AFTE. They don't have an educational standard." *Id.* at 50:11-13. However, AFTE's bylaws state that "[m]embership in the Association shall be limited to those persons of integrity with suitable education, training, and experience in the examination of firearms and/or tool marks." Defs.' Ex. 8 (Dkt. No. 72-8) at § III.1.A. According to Marrs, this is a key requirement to become an AFTE member. Marrs Aff. (Dkt. No. 72-2) at ¶ 8 (Affidavit of Ron Marrs, former chairman of AFTE's board of admissions). Furthermore, AFTE's membership application, which Nixon completed, contains entry blanks for "schools, seminars, and/or conferences" attended and "the highest level of education - College degrees and years obtained." Defs.' Ex. 9 (Dkt. No. 72-9) at 1-2. Therefore, although the substance of AFTE's education requirements is unclear, it is undisputed that AFTE only admits as members individuals who have received some formal education in firearm and tool mark identification. Defs.' Ex. 8 (Dkt. No. 72-8) at § III.1.A. Accordingly, the uncontradicted evidence demonstrates that Nixon testified falsely when he stated that AFTE does not have an educational standard for admission. Jeter Prelim. Tr. at 50:11-13. Therefore, Haag's statement regarding Nixon's "false testimony" is

substantially true and not defamatory. Jeter Prelim. Tr. at 50:11-13; *Bandido's*, 712 N.E.2d at 457.

In addition, when asked if the number of times he testified in court was a basis for admission into AFTE, Nixon responded "No, it is not." *Id.* at 50:14-21. However, Nixon's application for AFTE membership included an entry blank for Nixon to indicate the number of times he testified due to his experience with "firearm and/or tool mark evidence." Defs.' Ex. 9 (Dkt. No. 72-9) at 2. According to Marrs, this is also a key requirement for AFTE membership. Marrs Aff. (Dkt. No. 72-2) at ¶ 8. Accordingly, the Court's conclusion that Haag's statement contains substantial truth applies equally to Nixon's testimony that the number of times he testified in court was not a basis for AFTE membership.[1] Jeter Prelim. Tr. at 50:14-21; *Bandido's*, 712 N.E.2d at 457.

The second statement Nixon claims was defamatory is Haag's suggestion that Nixon was "disqualified as a firearms expert."[2] Defs.' Ex. 5 (Dkt. No. 72-5). Nixon asserts that he was not "disqualified" as an expert witness in the *Jeter* case. Rather, as Lubek's e-mail indicated, the court "refused to qualify" Nixon as an expert witness. *Id.*; *See also* Defs.' Ex. 7 (Dkt. No. 72-7) ("Jeter Trial Tr.") at 19-20 (sustaining Lubek's objection to Nixon's qualification as an expert witness for lack of foundation).

---

[1] Nixon argues that Haag's reference to Nixon's "false testimony" implied that Nixon intentionally attempted to deceive the *Jeter* court about the substance of AFTE's standards. However, Nixon has not designated any evidence that purports to demonstrate that Haag meant anything other than what he wrote in his e-mail. In other words, there is no indication that Haag meant to question Nixon's intent at the time he testified in the *Jeter* case.

[2] The following analysis also applies to the similar statement made in the subject line of Brundage's e-mail. Defs.' Ex. 5 (Dkt. No. 72-5).

The word "disqualified" suggests either that a person was once qualified but has since lost that qualification, or that a decision maker concluded that a person had not met a certain standard at a specific time. When the *Jeter* court sustained Ludek's objection to Nixon's qualifications as an expert witness, it concluded that the evidence did not support recognition of Nixon's asserted expertise in "[f]irearms, ballistics" at that time. Jeter Trial Tr. at 19-20. In other words, the *Jeter* court disqualified Nixon from testifying as a firearms expert. *See Heeb v. Smith*, 613 N.E.2d 416, 421 (Ind. Ct. App. 1993) ("[I]n defamation cases, the meaning of an allegedly libelous statement is to be determined by the plain and ordinary meaning of the word.").

Nixon correctly asserts that if a statement is reasonably susceptible to either a defamatory or non-defamatory interpretation, the issue should be resolved by the jury. *Hamilton v. Prewett*, 860 N.E.2d 1234, 1243 (Ind. Ct. App. 2007). However, either of the above interpretations of the word "disqualified" would be defamatory if there was no factual basis to support the word's use, and, inversely, both interpretations would not amount to defamation if truthfully imputed. Stated otherwise, although the word "disqualified" admits to two interpretations, both interpretations have a negative connotation. Therefore, the rule recited in *Hamilton* does not apply because Nixon's reputation was no more damaged by the correct interpretation of Haag's use of the word "disqualified" than by the interpretation that was not supported by the facts. *See Bandido's*, 712 N.E.2d at 457 ("Substantial truth is an absolute defense in defamation actions and the test is 'whether the alleged defamatory statement was more damaging to [plaintiff's] reputation . . . than a truthful statement would have been.'") (quoting *McIlvain v. Jacobs*, 794 S.W.2d 14, 16 (Tex. 1990). Accordingly, the Court concludes that there is no question Haag's statement that Nixon was

"disqualified as a firearms expert" in the *Jeter* case was substantially true. Jeter Trial Tr. at 19-20.

In addition, assuming for a moment that Haag's statement was not substantially true, the "literal truth" regarding the colloquy that took place between the court and counsel during the *Jeter* trial was included in the e-mail that Haag forwarded to Brundage. Defs.' Ex. 5 (Dkt. No. 72-5); *see Filippo v. Lee Publ'ns, Inc.*, 485 F.Supp.2d 969, 981-82 (N.D. Ind. 2007) (Moody, J.) ("A segment of a publication may not be read in isolation, but must be viewed with the whole publication in determining whether the publication constitutes defamation."). Specifically, the Haag/Brundage e-mails referenced and included Lubek's e-mailed statement that the *Jeter* court refused to qualify Nixon as a ballistics expert and that, thereafter, defense counsel abandoned his efforts to qualify Nixon as a ballistics expert. Defs.' Ex. 5 (Dkt. No. 72-5). As a result, any person who read Haag's and Brundage's e-mails was apprised of precisely what took place at the *Jeter* trial. *Compare* Defs.' Ex. 5 (Dkt. No. 72-5) at 2 (Lubek's e-mail to Haag), *with* Jeter Trial Tr. at 19-20, 25. In fact, Nixon's designated evidence demonstrates that at least two persons who received the Haag/Brundage emails were so apprised. See Pl.'s Ex. 8 (Dkt. 147-23) at 1 (referencing "any prior refusals by any other court to qualify [Nixon] as an expert witness"), 4 (referencing Nixon "not being allowed to testify in Indiana"). Therefore, even assuming Haag's statement contained an inaccuracy, the assumed inaccuracy unquestionably did not cause Haag's statement to have a more damaging effect on Nixon's reputation than that which the absolute truth would have produced. *Bandido's*, 712 N.E.2d at 457. Altogether, the record before the Court demonstrates Haag's statement that Nixon was

"disqualified as a firearms expert" is substantially true and, accordingly, not defamatory. Defs.' Ex. 5 (Dkt. No. 72-5), *Bandido's*, 712 N.E.2d at 457.

Next, in his response to the Court's Show Cause Order, Nixon argues that the only implication that can be drawn from the alleged defamatory statements in Haag's e-mail is that Nixon was disqualified for testifying falsely in the *Jeter* trial. Dkt. No. 146 at 20-21. Stated otherwise, Nixon argues that even if the Court determines that the alleged defamatory statements are substantially true in and of themselves, when read in context, the two statements combine to produce a false impression in the mind of the reader. The Court disagrees. The phrase regarding Nixon's "false testimony" and that regarding his disqualification are in separate sentences, which communicate different thoughts. Defs.' Ex. 5 (Dkt. No. 72-5) at 1. No reader would get the impression that Nixon was disqualified as an expert in the *Jeter* trial because he gave false testimony. However, even assuming that such an impression could be drawn from the two statements, as indicated above, Lubek's e-mail, which clarifies the events that transpired at the *Jeter* trial, was referenced and included in the Haag/Brundage e-mails. *Id.* at 1-2. Accordingly, when the e-mail is considered in its entirety, Haag's statements unquestionably contain substantial truth and are, therefore, not defamatory. *Filippo*, 485 F.Supp.2d at 981-82.

The last statement by which Nixon alleges the Defendants defamed him is Brundage's reference to "an AFTE headache by the name of John Nixon . . . [whose] days [may be] numbered." Defs.' Ex. 5 (Dkt. No. 72-5). Defendants assert that there are no statements of fact contained in this phrase and, as a result, liability for defamation cannot be imposed. *Bandido's*, 712 N.E.2d at 457. Nixon did not respond to Defendants' assertion and, accordingly, there is no question that this statement contains anything other

9

than Brundage's opinion, which is not capable of defamatory imputation. *See Hamilton v. Prewett*, 860 N.E.2d 1234, 1245 (Ind. Ct. App. 2007) (holding that "parody" does not constitute the false statement of fact that defamation requires).

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that plaintiff, John Nixon, has not raised an issue of material fact with regard to whether any of the alleged defamatory statements are true or otherwise incapable of defamatory imputation. Fed. R. Civ. P. 56(c). Having concluded that the statements at issue are not defamatory as a matter of law, summary judgment is **GRANTED** in defendants', Lucien C. Haag, David J. Brundage, and Association of Firearms and Tool Mark Examiners, favor on Nixon's defamation claim.

IT IS SO ORDERED this 28th day of July, 2010.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution attached.

Distribution to:

Matthew D. Bruno
KIGHTLINGER & GRAY
mbruno@k-glaw.com

Mark S. Fryman Jr.
STARR AUSTEN MYERS & MILLER
fryman@starrausten.com

Robert M. Kelso
KIGHTLINGER & GRAY
rkelso@k-glaw.com

Jeffrey S. McQuary
BROWN TOMPKINS LORY
jmcquary@brown-tompkins-lory.com

Raymond T. Seach
RILEY BENNETT & EGLOFF LLP
rseach@rbelaw.com

Scott L. Starr
STARR AUSTEN MYERS & MILLER LLP
starr@starrausten.com